IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| KIMBERLY MARSIGLIA, | * |
| *Plaintiff*, | * |
| v. | *   Civil Action No. RDB-24-3170 |
| C. R. BARD, INCORPORATED; BECTON DICKINSON and COMPANY | * |
| | * |
| *Defendants*. | |
| | * |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

In this diversity products liability action, Plaintiff Kimberly Marsiglia sues C. R. Bard, Incorporated, and Becton, Dickinson, and Company (collectively, "Defendants") for complications resulting from her February 26, 2008 surgery to treat stress urinary incontinence. (ECF No. 9 ¶¶ 6, 47) During surgery, health care providers surgically implanted a Bard Retropubic Urethral Support System ("Align System") into her body. (*Id.* ¶ 47) Marsiglia alleges that the Align System caused her to suffer mesh erosion into her bladder, colovestical and enterovestical fistulae, and acute and chronic pelvic pain, for which she received remedial surgeries in November 2021 and January 2025. (*Id.* ¶ 48-50) On October 31, 2024, Marsiglia filed her Complaint (ECF No. 1), which she amended on February 28, 2025. (ECF No. 9) This First Amended Complaint alleges four counts: (1) negligence, (2) strict liability-failure to warn, (3) strict liability-design defect, and (4) fraudulent concealment.

Now pending is Defendants' Partial Motion to Dismiss Count III of Marsiglia's First Amended Complaint (ECF No. 9), which alleges strict liability design defect, pursuant to

1

Federal Rule of Civil Procedure 12(b)(6). (ECF No. 10) Defendants argue that dismissal is proper because Marsiglia fails to sufficiently plead causation after the passage of sixteen years after implementation. (ECF No. 10-1 at 5–6). This Court has jurisdiction under 28 U.S.C. § 1332.[1] The parties' submissions have been reviewed; no hearing is necessary. *See* Loc. R. 106.5 (D. Md. 2025). For the following reasons, Defendants' Motion (ECF No. 10) is GRANTED, and Count III is DISMISSED WITHOUT PREJUDICE.

## BACKGROUND

In ruling on a motion to dismiss, this Court "accept[s] as true all well-pleaded facts in a complaint and construe[s] them in the light most favorable to the plaintiff." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (citing *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015)). Except where otherwise indicated, the following facts are derived from Plaintiff's First Amended Complaint (ECF No. 9) and accepted as true solely for the purpose of ruling on Defendants' Motion to Dismiss (ECF No. 10).

On February 26, 2008, Marsiglia, a citizen of Maryland, underwent surgery at Baltimore Washington Medical Center to treat stress urinary incontinence. (ECF No. 9 ¶ 6) As a part of the procedure, health care providers implanted a Bard Retropubic Urethral Support System, called the "Align System," into her body. (*Id.* ¶ 6) Defendants had marketed the Align System as a "safe, trusted" product able to treat pelvic organ prolapse and cure stress urinary incontinence. (*Id.* ¶ 9) Marsiglia alleges for the next thirteen years that she experienced numerous complications due to the Align System, such as mesh erosion into the bladder,

---

[1] Marsiglia is a citizen of Maryland. (ECF No. 9 ¶ 1) Becton, Dickinson and Company is a citizen of New Jersey. (*Id.* ¶ 3) The amount in controversy exceeds $75,000 (*Id.* ¶ 4)

colovestical and enterovestical fistulae, and acute and chronic pelvic pain. (*Id.* ¶ 48) On November 22, 2021, Marsiglia underwent four operations to remove the mesh from her body. (*Id.* at ¶ 49) She alleges that she experienced serious bladder pain from the mesh erosion after her surgery. (*Id.*) On January 1, 2025, Marsiglia underwent an additional, four-hour long surgery to remedy numerous adhesions that had formed in her small bowel, large intestine, and reproductive organs. (*Id.* ¶ 50) Her bladder was also removed during the surgery. (*Id.*)

## STANDARD OF REVIEW

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Federal Rule of Civil Procedure 12(b)(6) authorizes courts to dismiss a complaint if it fails to state a claim upon which relief can be granted. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive a Rule 12(b)(6) motion, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (quoting *Bell Atl., Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Where a claim contains multiple elements, the complaint must allege sufficient facts to establish each. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The inability to sufficiently allege one element of a claim is grounds for dismissal. *See id.*

Under this plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint need not include "detailed factual allegations." *Iqbal*, 556 U.S. at 678

(quoting *Twombly*, 550 U.S. at 555). It must, however, set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to plead a claim. *Iqbal*, 556 U.S. at 678. In other words, the factual allegations in the complaint, taken as true, must "permit the court to infer more than the mere possibility of misconduct" by the defendant. *Id.* at 679.

## ANALYSIS

Defendants move to dismiss (ECF No. 10) Count III of the First Amended Complaint, which alleges strict liability based on a defective design of the Align System.[2] (ECF No. 9 ¶¶ 79–88) Defendants assert that this claim must be dismissed because Marsiglia fails to sufficiently allege causation between any design defect in the Align System and her injuries. (ECF No. 10-1 at 5) This Court exercises diversity jurisdiction over this case and consequently applies Maryland law for strict liability design defects and federal law for the Rule 12(b)(6) pleading standard. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 79 (1938); *200 N. Gilmor, LLC v. Capitol One, Nat'l Ass'n*, 863 F. Supp. 2d 480, 483, 487 (D. Md. 2012).

---

[2] In a footnote, Defendants ask that the Court construe their Motion to Dismiss Count III as also being a motion to dismiss Count I to the extent that Count I would require Marsiglia to show a design defect. This Circuit strongly disfavors ruling on arguments raised in footnotes, as they lack the development required by Federal Rule of Civil Procedure 7. *See Harvey v. CNN, Inc.*, 48 F.4th 257, 277–79 (4th Cir. 2022). As this Court has previously explained, "ruling on an issue minimally addressed [in a footnote] is 'unfair to opposing party and would risk an improvident or ill-advised opinion on the legal issues raised.'" *Sanders v. Callender*, No. CV DKC 17-1721, 2018 WL 337756, at *7 n.5 (D. Md. Jan. 9, 2018) (quoting *Hunt v. Nuth*, 57 F.3d 1327, 1338 (4th Cir. 1995)). Thus, this Court treats the Motion to Dismiss (ECF No. 10) as applying only to Count III.

4

Maryland follows the concept of strict liability for products liability provided in Restatement (Second) of Torts § 402A (1965). *See May v. Air & Liquid Sys. Corp.*, 129 A.3d 984, 997 (Md. 2015) (citing *Phipps v. Gen Motors Corp.*, 363 A.2d 955, 963 (Md. 1976), which formally adopted § 402A). Under Maryland law, a plaintiff makes out a prima facie case of strict liability design defect by showing that "(1) the product was in defective condition at the time that it left the possession or control of the seller, (2) that it was unreasonably dangerous to the user or consumer, (3) that the defect was a cause of the injuries, and (4) that the product was expected to and did reach the consumer without substantial change in its condition." *Phipps*, 363 A.2d at 958. In a strict liability action, "as opposed to a traditional negligence action, the plaintiff need not prove any specific act of negligence," as the "relevant inquiry focuses not on the conduct of the manufacturer but rather on the product itself." *Id.*

Defendants' Motion to Dismiss (ECF No. 10) only specifically argues that Marsiglia fails to plead the causation element of the strict liability design defect claim. Therefore, the Court assumes, without deciding, that Marsiglia has sufficiently pleaded the other elements and analyzes causation only.

To sufficiently plead causation, Marsiglia must put forward enough facts for a reasonable fact finder to believe that the design defect in the Align System was a cause of her injuries. *Phipps*, 363 A.2d at 963; *Iqbal*, 556 U.S. at 684. As noted above, a complaint need only include "enough factual matter (taken as true) to suggest" that an element is met, "even if . . . [the] actual proof of those facts is improbable and . . . recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (internal quotations omitted). This Court has explained that pleading causation requires showing "some connective thread" between the alleged harm by

5

defendant and the alleged injury to plaintiff. *See Gough v. Rock Creek Sports Club*, No. PJM-19-3533, 2021 WL 795447, at *2 (D. Md. Mar. 2, 2021).

In support of their argument that Marsiglia has not sufficiently pleaded causation, defendants rely on a recent pelvic mesh case from this Court, *Thomas v. Ethicon, Inc.*, No. GLR-20-3729, 2021 WL 6126300, at *1 (D. Md. Dec. 28, 2021). (ECF No. 10 at 5) There, the plaintiffs were two women who had suffered from stress urinary incontinence and received, through surgical intervention, mesh implants developed and manufactured by the defendants. *Id.* "Over time, however, the materials used in the implants reacted negatively with their bodies, causing them to endure painful complications that eventually required them to undergo [further surgeries]." *Id.* In their complaint, the plaintiffs alleged that the vaginal mesh suffered from a design defect, and that the design defect caused their injuries. *Id.* at *1, 5. The defendants moved to dismiss the case on the basis that the plaintiffs had not sufficiently pleaded causation. *Id.* at *5. The Court agreed, explaining that the plaintiffs' complaint had only "offer[ed] general language regarding causation." *Id.* at *6. The plaintiffs failed to "provide any details . . . to connect [their subsequent surgeries] to the alleged defects" in the design of the vaginal mesh. *Id.* Citing *Iqbal*, this Court stated that the allegations of causation in the complaint were "largely conclusory statements devoid of factual enhancement." *Id.* (citing *Iqbal*, 556 U.S. at 678). As such, the Court found that the plaintiffs had failed to meet their pleading burden for causation. *Id.*

That case is persuasive here. In her Complaint, Marsiglia alleges that she sought treatment for stress urinary incontinence, had the Align System surgically implanted, and suffered debilitating complications. (ECF No. 9, ¶ 47, 48) Additionally, she alleges that she

underwent follow-on procedures to fix those complications. (*Id.* ¶ 48) Marsiglia also alleges that the design defect in Defendants' product caused her injuries. (*Id.* ¶ 86—87) While Marsiglia sufficiently alleges multiple defects with the Align system, (ECF No. 9, ¶ 85) her only statement alleging causation is that the "defective and unreasonably dangerous condition of the Align System was the proximate cause of the damages and injuries complained of by Plaintiff." (*Id.* ¶ 86) Nowhere in her Complaint does Marsiglia allege "some connective thread" between her harm and the Align System. *Gough*, 2021 WL 79544 at *2. Although her complications, such as mesh erosion into the bladder, acute and chronic pelvic pain, and scarring are similar to frequent complications from surgical mesh devices, (ECF No. 9, ¶ 12, 48, 50), Marsiglia's allegations of causation consist of conclusory statements that lack factual enhancement. *See Iqbal*, 556 U.S. at 678. Therefore, Marsiglia has not met the causation element.

Given Marsiglia has not sufficiently pleaded her claim of strict liability design defect, Defendants' Partial Motion to dismiss is GRANTED.

## CONCLUSION

For the reasons stated above, Defendants' Partial Motion to Dismiss (ECF No. 10) is GRANTED and Count III is DISMISSED WITHOUT PREJUDICE.

A separate Order follows.

Date: October 31, 2025

/s/
_____
Richard D. Bennett
United States Senior District Judge